**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

MEEKER COUNTY,

Plaintiff,

v.

NORTH RIVER INSURANCE COMPANY,

Defendant.

Civil No. 00-1889 (JRT/FLN)

**MEMORANDUM OPINION AND ORDER ON SUMMARY JUDGMENTS MOTIONS**

Michael J. Thompson, MEEKER COUNTY ATTORNEY, 325 North Sibley Avenue, Litchfield, MN, 55355-2155, for plaintiff.

Christian A. Preus, MEAGHER & GEER, P.L.L.P., 4200 Multifoods Tower, 33 South Sixth Street, Minneapolis, MN, 55402, for defendant.

This dispute involves the interpretation of an insurance policy. Plaintiff Meeker County purchased two certificates of deposit from the First National Bank of Keystone in the total amount of $190,762.00. The bank failed and Meeker County was reimbursed for only $100,000 through the Federal Deposit Insurance Company ("FDIC"). Meeker County now seeks to recover $90,000 from its insurance provider, defendant North River Insurance Company ("North River"), based on a "Faithful Performance" endorsement in its insurance policy. Meeker County argues that it sustained a loss as a result of the

FILED JUL 2 7 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD.
DEPUTY CLERK

failure of its treasurer to faithfully perform her duties, triggering coverage under the policy. This matter is now before the Court on the parties' cross-motions for summary judgment. The Court concludes that summary judgment is appropriate in favor of North River as the insurance policy effectively excludes coverage for a bank failure, as occurred here.

## BACKGROUND

The parties have stipulated to the facts in this case, making it particularly suited for summary judgment. Sharon Euerle was the Meeker County Treasurer for the relevant time period. Meeker County purchased a Commercial Crime Policy from North River. The policy was purchased by Meeker County in its efforts to satisfy the requirements of Minn. Stat. § 385.01(2).[1] The policy included coverage for "Public Employee Dishonesty." It also included an endorsement, labeled "Faithful Performance of Duty,"

---

[1] Minn. Stat. § 385.02(2) provides that:

> Before entering upon the duties of office the county treasurer . . . shall give bond, to be approved by the county board, and in such sum as the county board directs. . . . Such bond shall be payable to the state, conditioned that the treasurer shall faithfully execute the duties of the office, and for the safekeeping and paying over according to law all moneys which come into the treasurer's hands for state, county, town, school, road, bridge, poor, and all other purposes.
>
> In lieu of the individual bonds required . . . a schedule or position bond or undertaking may be given in the respective amounts so required conditioned as above and upon a form to be prescribed by the commissioner of administration.
>
> The county board shall pay the premiums upon such bonds or undertakings of the treasury of the county in cases where the surety is a corporation duly authorized by law to be surety.

that specifically amended the "Public Employee Dishonesty" coverage. The relevant portions of the endorsement provided that:

1. The following is added as a Covered Cause of Loss:

   Failure of any "employee" to faithfully perform his or her duties as prescribed by law, when such failure has as its direct and immediate result a loss of your Covered Property, including inability to faithfully perform those duties because of a criminal act committed by a person other than an "employee."

2. The following exclusion is added:

   Depository Failure: loss resulting from the failure of any entity acting as a depository for your property or property for which you are responsible.

The policy had a coverage limit of $50,000, as well as an additional endorsement, which added $40,000 of coverage for the position of County Treasurer, bringing the total coverage for that position to $90,000.[2]

On September 18, 1998, Euerle purchased a Certificate of Deposit ("CD") on behalf of Meeker County in the sum of $96,000 from First National Bank of Keystone through Prudential Securities. The CD was callable on September 23, 1999. On September 21, 1998, Euerle purchased another CD on behalf of Meeker County in the sum of $94,762 from the First National Bank of Keystone through Norwest Investment Services, Inc. This second CD was also callable on September 23, 1999.[3] On

[2] Accordingly, Meeker County is attempting to recover the policy limit of $90,000 even though its total loss is alleged to be $90,762.

[3] Minn. Stat. § 118A.04 requires that all county funds invested in CDs be fully insured by the FDIC.

September 1, 1999, the First National Bank of Keystone was closed by the Comptroller of the Currency and the FDIC was named its receiver.

In October 1999, Meeker County received payment from the FDIC for the entire principal amount of the Norwest Investment CD as well as $5,000 towards the principal amount of the Prudential CD.[4] That payment left a balance due on the Prudential CD of $90,762.50. After realizing that Meeker County would not recover the remaining amount from the FDIC, Meeker County submitted a Proof of Loss to North River requesting payment under the policy for $90,000. North River denied the claim on February 16, 2000, and Meeker County then commenced this action.

## DISCUSSION

### I. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not appropriate if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for

---

[4] The FDIC only covers up to a maximum of $100,000 per depositor for losses due to bank failure.

the nonmoving party. *Id.* Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076 (8th Cir. 1980). However, the nonmoving party may not merely rest upon allegations or denials in its pleadings, but it must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *Burst v. Adolph Coors Co.*, 650 F.2d 930, 932 (8th Cir. 1981).

## II. Policy Interpretation

The only issue before the Court is whether Meeker County's loss is covered by the North River Commercial Crime Policy. Meeker County argues that its loss was the result of Euerle's "failure . . . to faithfully perform . . . her duties as prescribed by law . . . ." and is thus covered by the "Faithful Performance" policy endorsement. It argues that Euerle failed to perform her duties as prescribed by law by failing to follow the requirements of Minn. Stat. § 118A.04, which requires that all county funds that are invested must be fully insured through the FDIC. Meeker County contends that the North River policy is ambiguous and should therefore be construed against North River and in favor of Meeker County. The Court finds that the depository failure exclusion included in the "Faithful

Performance" endorsement precludes Meeker County from recovering for the loss in this case.

Insurance coverage issues and interpretation of insurance contract language are questions of law for the Court. *Jenoff, Inc. v. New Hampshire Ins. Co.*, 558 N.W.2d 260, 262 (Minn. 1997). When interpreting an insurance policy, the Court must give effect to the intentions of the parties as reflected in the terms of the contract. *Id.* Terms that are contained in an insurance contract but that are not specifically defined must be given their plain, ordinary or popular meaning. *Id.* Ambiguous terms in an insurance policy are to be resolved strictly against the insurer and in accordance with the reasonable expectations of the insured. *Id.* An ambiguity exists when the language of the policy is reasonably subject to more than one interpretation. *Id.* The Court may not, however, read an ambiguity into the plain language of a policy in order to provide coverage. *Id.*

In this case, there is no ambiguity in the insurance policy. While Euerle's conduct in this case certainly falls within the purview of the "Faithful Performance" endorsement, the policy contains a specific exclusion for "[l]oss resulting from the failure of any entity acting as a depository for your property or property for which you are responsible." This exclusion is clear and unambiguous and must be given effect. Here, the First National Bank of Keystone was acting as a depository for Meeker County. It was holding county funds, which constitute "property," for which Meeker County was responsible. The exclusion therefore applies as its language is simply not susceptible to more that one

interpretation. The Court is constrained to find that the exclusion applies in this case and absolves North River of any obligation to cover Meeker County's loss.[5]

Despite this language, Meeker County argues that *City of Marshall v. Gregoire*, 259 N.W. 377 (Minn. 1935), is controlling in this case. In *Gregoire*, the City of Marshall brought suit against the city treasurer and his surety upon three fidelity bonds after the Marshall State Bank failed. *Id.* at 377-78. The court in Gregoire found that the surety could not escape liability based on the exclusionary language in the bonds. *Id.* at 378-80. While *Gregoire* does offer the Court some guidance, the case is distinguishable from the situation here.

Significantly, the language of the fidelity bonds in *Gregoire*, while containing a "faithful performance" standard, was not the same as the language in the North River insurance policy. In *Gregoire*, the fidelity bond "was conditioned that Gregoire 'as such treasurer shall well and faithfully perform all the duties of his said office.'" *Id.* at 377. The bonds also contained an exclusionary provision stating that "[t]he surety shall in no way be held liable for any loss . . . caused by the failure of any bank, institution or depository of any kind to pay deliver over or properly account for any money, monies, papers, securities or property of any kind placed on deposit therein or in its custody by . . . Gregoire as such treasurer." *Id.* at 377-78. In *Gregoire*, the court relied heavily on the fact that the Marshall State Bank had not been properly designated as a depository of city funds as required by Minnesota law. *Id.* at 379. The court explained that based on

[5] The Court notes that if the additional "Depository Failure" exclusion were not included in the policy, the result of this case would undoubtedly be different.

the literal language of the bonds, the surety would likely be exempted from liability. *Id.* However, the court found that there was another, equally reasonable interpretation of the bond language; that the surety was exempted from liability only if the city funds were deposited in a properly designated depository. *Id.*

Here, there is no equally reasonable alternative interpretation of the North River "Depository Failure" exclusion. Moreover, the language of the fidelity bonds focused on the failure of the bank or depository **to pay**, while the language of the insurance policy in this case more narrowly focuses on the actual failure of the depository. The Court therefore believes that *Gregoire* is limited to its unique factual circumstances; circumstances that are not present in this case. As a result, the Court must rely on the plain language of the North River insurance policy. And as noted above, the plain and unambiguous language of the insurance policy does not require North River to cover Meeker County's loss in this case. North River's motion for summary judgment is therefore granted.

**ORDER**

Based upon the foregoing, the submissions of the parties, the arguments of counsel and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff Meeker County's motion for summary judgment [Docket No. 7] is **DENIED**.

2. Defendant North River Insurance Company's motion for summary judgment [Docket No. 10] is **GRANTED**.

3. The Clerk of Court is **DIRECTED** to enter judgment in favor of defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: July 26, 2001
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

**DATE MAILED TO COUNSEL/PRO SE PARTIES:** July 27, 2001

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

**Please forward this announcement to the recipient of this fax.**

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

---

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500